15-3902, Mr. Edelstein and McConnell. Good morning, Your Honors. May it please the Court, Jonathan Edelstein, for the Petitioner Appellant, Hai Kim Nguyen. With the Court's permission, I would like to reserve five minutes for rebuttal. That's fine. Okay. Your Honor, our position in this case, first of all, is that the district court deferred to the wrong state court opinion. There is a very clear rule of decision when state court opinions come out differently, which is that the federal habeas court is to defer to the last one which articulates its reasoning. In this case, that was the appellate division ruling on the post-conviction review decision, not the decision of the superior court. And the district court dismissed the appellate division opinion as essentially a typographical error. It dismissed the relevant language as a typographical error. And I would submit that doing so is really the opposite of deference. What it is, is looking over the shoulders of the state judges to determine what the federal court thinks they really meant to say, as opposed to going with what they actually did say. That it's not the place of a federal court, applying the AEDPA, to grade the state judge's papers, resolve what it believes to be ambiguities in a state court decision. Our position is that the rule of decision requires it to go with what the appellate division said, especially since in this case... Wait a second. When you say it's to go with what the appellate division said, we have an argument made in the trial court on Speedy Trial, including a lengthy footnote in which the argument explicitly sets out the Barker factors and argues for Speedy Trial constitutional ruling. And the trial court actually makes a ruling on Speedy Trial, including referencing Barker v. Swingo. Why would we read that and not believe just the way the district court it was raised, it was argued, it was ruled on? First of all, Your Honor, because under New Jersey law, and for that matter under federal law, making a point in a footnote does not raise an issue before the court. Well, you're right. I was on the appellate division, and I always read the footnotes. I always thought you could... I mean, it's part of a... it was a sort of a secondary argument to the interstate agreement on waiver, but you know, it wasn't a badly stated argument. I mean, it was, you know, it was really set out at length. It was... well, in addition to the New Jersey case law regarding the fact that a footnote does not suffice to raise an issue, the... when we get to the oral argument of the... I've got to stop you for a minute. Yes. Is your argument really that as a matter of New Jersey law, you can't make a substantive argument in a footnote? It's got to be above the line, or you've waived whatever he said. You have a three-page... bad advocacy maybe, but you wrote a three-page footnote, and your error in putting it below the line means you've lost your rights. Is that the position you want to take? It is the position based on the case law cited in the brief that I believe... It's a general rule that, you know, making an argument in a footnote is waived. That's a general rule. But when you have a footnote that has, what, nine paragraphs? I believe there were four or five, but... I thought there were more than that, but it's a lengthy footnote. Now, it should have been put in the text. It wasn't, but it certainly lays out what the argument is, and you're now telling us it was waived. Okay. Well, let's proceed to the oral argument. If this issue was not waived, if this issue was really raised, it would stand to reason that counsel would argue it, and the only references to speedy trial in the arguments made by defense counsel are tied to the IAD. The arguments are at 51 to 52 of the transcripts, of the appendix, starting at the bottom of page 51. So that's really, that's an argument that he did a bad job. Well, it's an argument that he didn't raise the issue meaningfully. He should have raised it. The real issue then becomes, let's just assume you're right on everything, but let's work backwards. What prejudice was there? Well, I think the district court set out the prejudice very clearly. He would have got out in 2023 instead of 2029? That's prejudice, Judge. I would certainly say six years of somebody's life is prejudice. The Supreme Court has said that that's prejudice, too. In Strunk? In the Strunk case, yes. How does Strunk ultimately come out? What was the ultimate ruling there in the 73 decision in Strunk? I believe that came out against the petitioner in that case. Correct. So you've got, in Barker, you've got, how many people's delay in Barker? Would you have guessed, Mr. Barker, it was five years? I believe it was around five years, yes. And then the petitioner wins in Doggett, and how many years was that delay? It was more than what was at issue in this case. I don't remember the exact number. So this case is somewhere between the two? Yes. And you're saying if there was not a delay, this person could have tagged on to what would have started serving the sentence here in New Jersey much sooner? Correct, Your Honor, and since that sentence was not that dated, since the concurrent portion of that sentence with New York only took effect after the New Jersey sentence was issued, that if he had been sentenced earlier in New Jersey, that concurrent portion of the sentence, as the district court correctly stated, would have begun considerably earlier, and he would have spent, and would spend, because we're still talking about time to be served in the future, considerably less time in prison. In addition, he, I mean, this is certainly ancillary to the years of life, but one of the items of prejudice that's been mentioned in these speedy trial-related decisions is the defendant's security and peace of mind. And here's a defendant sitting in solitary in New Jersey, not knowing if this case is ever going to be disposed of, dragging on year after year. Well, assume, okay, let's say we agreed with you, there's prejudice. You've got to win on both deficiency and prejudice, right? Yes, Your Honor. Okay. So, looking at deficiency, again, your backup argument to the, it was only a footnote argument, is, in essence, he didn't precedent oral argument. He wasn't vigorous enough in making the argument. Is that it? Well, not only that he wasn't vigorous enough. I'm not talking about, you know, counsel didn't pound the table hard enough. He, first of all, didn't bring out any of the facts that the district court brought out. He let go unchallenged the assertion that, well, this delay was all because of motion practice. The district court went through the timetable, parsed each of these delays, which the state, by the way, has not disputed in their place. Right, right. And the district court, doing that, having done that, still came back and said it wasn't deficient, right? Well, because the district court was apparently assuming, and this, I think, was unspoken in the district court's decision, but that the district court was going on the presumption that mentioning the issue was enough. I know who I'm going to stop you when you say mentioning the issue. We're talking about a footnote that runs 600 plus words, nine paragraphs, lays out the argument in some detail. It cannot fairly be called a, quote, passing reference, unquote, which is how, at least our case law on labor of issues, refers to circumstances that would give rise to labor. Some passing reference. This is a detailed argument. So I don't think it's an accurate thing to say it was just mentioned. He argued the point. So given the deference that Strickland requires us to give to a lawyer, what more did he have to do, in your view, in order to rise above the Strickland bar of deficiency? First of all, Your Honor, of those nine paragraphs, and you are correct, there were nine, only one of them mentions the second and usually the most critical barker factor. There's only one paragraph on the reason for the delay. And all it says is the state has the duty, as well as the duty of ensuring, that a trial is consistent with the process. In this instance, the prosecutor's office attempted to bring, in 2003, to bring Mr. Wendt to New Jersey under the interstate agreement of detainers. It then goes on to the third factor, without discussing anything that happened after 2003, without discussing any of the, I mean, it mentions reasons for the delay and then never discusses the reasons for the delay. So you're saying he didn't do a, he argued it, but he argued it poorly. And then at the oral argument, he didn't argue at all, and then conspicuously left it out of the issues he was preserving for appeal. And I believe, as this Court has found in the Forte case, and certainly, you know, cases such as Jones v. Barnes indicate that there's a right to effective assistance at the appellate stage. And if you, if counsel was indeed raising this issue meaningfully, why did he list the issues he was preserving for appeal, including the IAD, which didn't even apply to this case, and then not mention constitutional speedy trial in there? This was a case, he did, you know, assuming that this substantive footnote can be considered to have raised the issue, there is only one of those nine paragraphs that discusses the most critical factor. It does it in a completely conclusory fashion. And then there was no follow-up. And, Your Honors, I would submit that even when we're talking about a doubly deferential standard, even when we're talking about the latitude the counsel has on the Strickland, that's mail-in. That's nothing more than mail-in. He brought up the speedy trial issue when, like July of 2009? The motion, the date on the motion papers is, looks like September of 2009. I thought it was July, but... Actually, September 21st of 2009 was the... The first time he brought it up. That was the first time, yes. And when was the guilty plea? The guilty plea was immediately after the IAB motion was denied. I believe that there had already been negotiations and an arrangement had been made that if this IAB motion were to be denied, he would plead guilty on the terms that were out, that were pled to in the court, involving a partially concurrent sentence and a carve-out of certain issues for appeal, which, again, did not include a constitutional speedy trial. You know what I don't understand here? In order under Strickland, if counsel didn't push the speedy trial argument, and he should have, there's no basis for relief unless it would have been successful. And, in other words, there's no prejudice. You have to show that the lawyer was ineffective in the way he was going and that there was prejudice. But why wasn't there just a direct motion to dismiss on the grounds of a denial of speedy trial? Because you have to show that that would be effective, and you have to show it in the ineffective assistance of counsel argument. Your Honor, I think that's precisely what our claim is, that there should have been such a motion, that counsel should have moved to dismiss on constitutional speedy trial grounds. Why wasn't it raised in the federal proceedings that he was denied a speedy trial, period, without the question of counsel's ineffectiveness? Well, I can't say because I was not the counsel below in the habeas petition. I do see that the district court referred to that, and in the district court's opinion that issue could have been raised independently, but it's actually kind of an arcane way that the district court believes that it could have been raised. Well, assuming the district court is right, is it fair to assume that the reason it wasn't raised is because counsel thought, you know, we'll lose on a straight-up speedy trial. We've got to dress this thing up as ineffective assistance of counsel. Well, Your Honor, given that prejudice, the standard of prejudice on district land would require, as Judge Greenberg said, that a speedy trial motion would have been successful. You've got to face it either way, right? Correct. You can't raise ineffective assistance for not raising this issue. Without arguing that you would have won this issue had it been raised. Mm-hmm. I see I'm long since out of my time, Your Honor. If there are no further questions at this time, I'll reserve for rebuttal. We'll get you back on rebuttal. Mr. McConnell? I just have to indicate this. I'm no longer an assistant prosecutor. I'm a special deputy attorney general in New Jersey, acting assistant sub-current prosecutor, or now I'm the authority of the attorney general. Okay. I just wanted to make a note of that. I think, Your Honor, to correct you upon that, one of the major things in this case is there's no prejudice in this case. I think the petitioner. Well, the district court thought there was prejudice, right? I mean, that's why the district court, in effect, wanted us to hear it. Well, I submit that there's no prejudice because the law division found that there was no speedy trial problem in this case. The PCR court found that there was no speedy trial problem in this case. And also, I think the last health division panel found that there's no prejudice. Well, I mean, this case mentioned to your opposing counsel that it's somewhere between Barker and Doggett. In Barker, there was a delay of five years. I forget how much of it was attributable to the defendant. But in Doggett, it was a delay of eight-and-a-half years or so. And six years was attributable to the prosecutor. And here you've got seven-and-a-half years. And it looks like, based on what the district court did in pretty careful analysis, is about four-and-a-half years are attributable to the prosecution. I'm not sure about four-and-a-half years. I think part of it is court problems. I think, obviously, that's not really relevant. But considering whether or not it was prejudice, I think part of it is court scheduling. Obviously, some of the motions were not heard expeditiously. Part of it was obviously the defense counsel. But certainly part of it was probably the state. I can see that. Look, I mean, go one, two, three. There's at least five instances where they run down. You're disagreeing that the court was correct that there was about four-and-a-half years of the seven-and-a-half years was attributable to the prosecution here? I'm not sure. I would not necessarily agree with that per se. I think part of it is court-related. I don't think we've dragged our feet in that case. You'd have to concede, though, wouldn't you, that this is an extraordinarily long time to bring a case to trial? Yeah. I don't usually see cases in our county. We have resources to deal with these types of cases. I think this is an unusual case. Part of the problem is the fact that the defendant had been arrested in New York, initially sent to New York. I mean, speedy trial must mean something. And it means that you need to get someone tried quickly for a host of reasons in order to get things moving through the system, in order not to have memories become dim or people die, et cetera. That's right. It's as interesting as speedy trial as well. On the flip to that is if somebody is guilty and you don't really want them, on a procedural matter, not to get to the merits of what could be a very serious crime, which is what we had here. So I understand the policy concerns. But it looks as if you've got a district judge here, Shipp, who's pretty concerned about what happened here. And you're saying you're not even sure why it happened. You weren't counseled then. I was not. And so there is an argument that it could be he would be out in 2023. I mean, I'm somewhat familiar with this because 41 years ago, the first case I ever argued to the D.C. Circuit was a case just like this, that the person who had the trial gone sooner could have been out more quickly. Now, I lost, but I didn't have as good a set of facts as your opposing counsel has. Well, in this case, obviously, the petitioner pled guilty. He could have pled guilty earlier if he was going to plead guilty. Obviously, and he also did not invoke the speedy trial right. At the time when he didn't file the motion, the I.A.D. motion, which I state also, the appellate is also indicating. Speaking of the I.A.D. motion, isn't it the case that Mr. Nguyen, when he was extradited, it was under an entirely different legal arrangement than the I.A.D.?  Okay, so since he was transferred under procedures for the Uniform Criminal Extradition Act, instead of the I.A.D., wasn't it just manifestly wrong for his lawyer in the state court to make a bunch of arguments about the I.A.D.? I can't really set defense counsel's mind. Well, I'm not asking you to get into defense counsel's mind. I'm just saying he was wrong, right? I mean, it was completely, the I.A.D. didn't have anything to do with the extradition. It was handled in a different way. So to put forward a bunch of arguments at the trial and appellate level about the I.A.D., doesn't that show a deficient performance by counsel? Well, I think he may have thought that it applied. He thought so, but he was wrong. That's the point. It wasn't implicated. It turns out often wrong. Right. So if you make your arguments center on a legal point which is not actually relevant to the case because factually the I.A.D. wasn't the tool that was used for extradition, should that raise a concern for us that, yeah, this was deficient performance? Well, at the same time, they did indicate in their footnote that the speech trial, they're applying this case that the defense petitioner's right to speech trial may have been violated. It was considered by Judge Armstrong at the time of the plea, at the motion before the plea. And I would submit that, you know, we're talking about prejudice here. If he had made a more formal speech trial motion, it would have been granted. I think Judge Armstrong indicated at the time of the plea, at the time of the motion, that it would not have been. I think the appellate division also indicated that. How did the appellate division indicate that a constitutional speedy trial ruling would not have been granted? I think in the second appellate decision they indicated. In the ruling of the appellate court, they took on Barker v. Wingo and rendered a decision? I'm not sure if they did or not. I think they indicated that they had no problem with the finding of the post-conviction relief court, that the petitioner's right to speech trial was not violated. Okay. And, again, I would submit there was no prejudice in the case. I don't have any other questions. Do I? Thank you.  There's no questions? No. Thank you, Your Honor. Mr. Edelstein. Your Honor, Your Honors, very briefly. First of all, adding on the issue of prejudice, under the Doggett case, once you have the delay of a year or more that's attributable to the prosecution, prejudice is presumed, and at that point the state has to prove a lack of prejudice. Hold on just a second, Mr. Edelstein, because I would like you to respond. You can't. There's a statement that Mr. McConnell made that's pretty significant. He said that at no point during the course of the lengthy proceedings in the trial court did your client ever make a speedy trial objection. That's correct as a factual matter, right? It is, Your Honor. Okay. And doesn't Barker v. Wingo say that if that objection isn't raised, it will be extraordinarily difficult for a defendant to be able to actually make a claim of a constitutional violation? My reading of Barker, Your Honor, is actually quite the opposite. That is, one of the four factors is whether the defendant made a speedy trial demand or objection. I'll read you the language and have you respond to it because we don't have to argue about what it says. I'll read it to you. Quote, failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial, close quote. So what do we make of that? Well, Your Honor, I believe that has to be read in context, first of all, in the same case saying that the defendant has no duty to bring himself to trial. But second of all, even if we take the word difficult, it certainly didn't say impossible. And the absence of an objection is one out of the four factors which has to be weighed in light of the other three, which include in this case the extraordinary length of the delay, the presumption of prejudice under Doggett, which I think refutes counsel's argument that Mr. Wynn could have pled guilty earlier because the record is silent here on whether any plea offers were made to him earlier, whether the state was willing to make a plea offer earlier, what the terms of an earlier plea would have been. The state would have to show as part of its burden under Doggett that, yes, he could have taken the plea at an earlier time regardless of all of the delays in the trial. No, we weren't waiting for the motions to be resolved to make an offer. No, we weren't waiting for the insanity issue to be resolved to make an offer. There's nothing in the record that shows that he could have, that if he had chosen to plead just in the middle of all of this, in short circuit at all, that he would have gotten similar terms as opposed to if he had chosen, if the motions and the insanity issue had been resolved earlier and put the case into a similar posture. Could you have one, Mike? That's the question that Mr. McConnell raised that was sort of raised earlier, but what the state court seems to have said, even as to prejudice, yeah, you wouldn't have won. You just wouldn't have won this. Under Ed Poddeference, how do we say that that is an unreasonable application of federal law? Your Honor, actually, I believe that goes all the way to contrary, too, because at 169 to 170 of the record, which is where the appellate division discusses that issue, it lists the four Barker factors and then only discusses one of them. And the argument is it got that one wrong. Well, first of all, it got it wrong not analyzing the other three, starting with the length of the delay itself and the presumption of prejudice. But certainly as to the, Your Honor? Under Richter, we are to fill in the gaps if a state court doesn't say anything about an issue. We're to see if there's a reasoned basis under federal law to justify their decision. Are you saying that a state court that gives partial discussion to an issue but not full discussion is actually in a worse position than a state court that says nothing at all? Because under Richter, we've got to give some analysis and try to come up with something for them. Here, they've dealt with one. Why isn't that better than doing nothing? Your Honor, Mark Twain did once say that it's better to keep silent than have people think you're a fool and open your mouth and remove all doubt. And I'm certainly not calling the appellate division judges fools. But what I would argue is that a silent decision is different from one that actually does, you know, affirmatively get it wrong, that does analysis and then affirmatively uses the wrong standard. I would argue under Harrington v. Richter that there's some room to take a silent decision and say, yes, you know, this issue was raised before then. They must have used the right standard. But when the court opens its mouth and removes all doubt, I would say that room no longer exists. And in any event, I would submit that in its analysis of the one factor that it did analyze, the appellate division very nearly applied a blanket rule saying, you know, because the defendant made motions, all the delays attributable to him. I would submit that if the appellate division had analyzed this reasonably, and I think we're not even talking correct at this point, we're talking reasonable, that it would have looked at the actual progress of the case, looked at each time period the way the district court did as to the cause of the delay, rather than simply saying, oh, defendant made motions, that's the end of the story. I don't think there's anything in Supreme Court law that supports such a finding. And I would submit that, yes, to the extent that the state courts found that a speedy trial motion would not have been successful, that that is an unreasonable application of Barker v. Wingo and all of its Supreme Court progeny. Thank you very much. Thank you, Your Honor. Thank you very much. Thank you for both counsel appearing today. And we'll stand in recess.